UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

GLENDORA WILSON-OLIVER,  Case No. 21-21272-dob
　　　　　　　　　　　　　　　　　　Chapter 13 Proceeding
　　　　　　　Debtor.　　　　　　　　　Hon. Daniel S. Opperman
_____/

OPINION REGARDING FEE APPLICATION OF
FREGO & ASSOCIATES – THE BANKRUPTCY LAW OFFICE, PLC

Frego & Associates – The Bankruptcy Law Office, PLC ("Frego") filed a Fee Application for $10,440.50 of attorney fees and $283.88 of costs for its services and costs rendered for Ms. Wilson-Oliver prior to withdrawing as her counsel. Ms. Wilson-Oliver objects to these fees and costs and refers to her Contract with Frego. After review of this Contract, the pleadings in this case, and considering the Court hearings, the Court awards attorney fees of $4,000 and costs of $283.88 for the reasons stated in this Opinion.

Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 157, 28 U.S.C. § 1334, and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

Findings of Fact

Ms. Wilson-Oliver suffers from severe economic stress on many fronts and needed expert legal advice, so she consulted with Frego and retained that office on October 9, 2021, as witnessed by a Chapter 13 Client Understanding produced and filed by Frego on July 19, 2022 at Docket No.

1

84 and a Chapter 13 Retainer Agreement dated December 1, 2021 at Docket No. 83. Relevant portions include:

> You are retaining Frego & Associates – The Bankruptcy Law Office, PLC to file a Chapter 13 bankruptcy case.
>
> . . .
>
> You received a **PLAN OF ACTION** during your first visit with us. That **PLAN OF ACTION**, incorporated here, outlined the basics of what will be paid through the Chapter 13 bankruptcy, and a very rough estimate of what your Chapter 13 Plan Payments will be.
>
> Think of this **PLAN OF ACTION** as an initial proposal to the Judge and to your creditors about how you wish to reorganize your financial situation. Our attorneys will work with you to get this proposal CONFIRMED and accepted by all (this usually takes the first 3 or 4 months of the case, and often after objections are filed by the Trustee and creditors...the objections are a normal part of the process). Our Chapter 13 proposal can change, especially if we need to negotiate with the Trustee or Creditors on your behalf to get them to agree to the proposal.
>
> . . .
>
> We will strive to get your Chapter 13 case confirmed, but need your help. **YOU CAN HELP BEST BY MAKING SURE TO ALWAYS MAKE ALL YOUR CHAPTER 13 PAYMENTS AND ALWAYS SHOWING UP FOR COURT**.
>
> . . .
>
> The undersigned Client(s) employs and retains Frego & Associates – The Bankruptcy Law Office, PLC, hereinafter "Attorneys", to represent Client(s) in a Chapter 13 Bankruptcy.

Accordingly, Frego filed a Chapter 13 Petition on December 1, 2021. Because of the emergency nature of her need for bankruptcy relief, her Schedules, Statement of Financial Affairs, and Chapter 13 Plan were not filed until December 8, 2021. These papers reveal that she owned three parcels of real estate valued at $279,000 and personal property valued at $18,342, which totaled $297,342.

In particular, the value of her properties and status of her creditors is summarized as follows:

  2300 W. Snover Road      $195,000 (value)
    Team One Credit Union    $ 2,900
    Tuscola County Treasurer   $ 9,000

  1880 Forks Road        $ 70,000 (value)
    Northstar          $106,000
    Tuscola County Treasurer   $ 9,000

  Chambers Road        $ 14,000 (value)
    Tuscola County Treasurer   $ 1,407

  Unsecured creditors       $396

Her Schedules I and J disclose income of $2,752 and expenses of $1,139, resulting in $1,613 of monthly net income.

With these assets and creditors, Ms. Wilson-Oliver's Chapter 13 Plan proposed to treat her creditors as follows:

1. Northstar – Class 4.1
  1880 Forks Road
  $605.00 per month via Trustee

  Northstar – Class 4.2
  1880 Forks Road
  $180.00 per month for 60 months
  $10,800.00 in arrears

2. Team One Credit Union – Class 5.1
  2330 W. Snover Road
  Total to be paid including interest $2,899.80
  $48.33 per month via Trustee

3

3. Tuscola County Treasurer – Class 5.2
1880 Forks Road
$228.54 per month via Trustee

2330 W. Snover Road
$228.54 per month via Trustee

Chambers Road
$35.73 per month via Trustee

Her Plan also contained two attachments which included a liquidation analysis disclosing $164,386 as available to her creditors in a Chapter 7 proceeding. The second attachment included an estimate of her attorney fees which Frego prepared indicating $4,000 for attorney fees through confirmation and $3,500 for post-confirmation services, for a total of $7,500.

But Ms. Wilson-Oliver's Chapter 13 was not to be easy for many reasons, including:

A. Northstar Bank filed a lawsuit against Ms. Wilson-Oliver in Tuscola County Circuit Court and obtained a judgment determining that she owed it $105,856.63 plus interest after July 22, 2021. The judgment was entered on August 12, 2021 and although Ms. Wilson-Oliver filed a motion to set aside the default and default judgment, the Tuscola County Circuit Court denied her motion on September 1, 2021. No appeal was taken, so Northstar initiated foreclosure proceedings against Ms. Wilson-Oliver.

B. The Tuscola County Treasurer resorted to its Michigan law rights to collect past due real estate taxes and was in the process of completing the necessary court actions to allow for foreclosure of Ms. Wilson-Oliver's real estate and subsequent sale of that real estate to pay the outstanding taxes.

C. The complications caused by the dismissal of an earlier case within one year, which meant that the automatic stay was only in place for 30 days unless extended by the Court. Frego did not file the necessary motion within 30 days and had to resort to the extraordinary procedure of convincing this Court to impose a stay, which it ultimately did on February 14, 2022, but with conditions and limitations. Frego's fees that are categorized as services related to relief of stay services total $4,337.50.

D. The failure to file a timely motion to extend stay resulted in a less than orderly presentation of the issues regarding the Tuscola County Treasurer and Northstar with the added burden placed on Debtor to convince the Court of the requisite facts to support a continuation/extension/imposition of a stay. On the plus side, Debtor did obtain a stay and an earlier ruling as to the Tuscola County Treasurer, but all at an added and unnecessary cost.

E. Debtor's plan appeared improper when filed because Debtor proposed to pay $1,612.14 per month for 60 months totaling $96,728.40, with $96,328.40 going to creditors or claimants other than Class 9 General Unsecured Creditors. Debtor's Liquidation Analysis, Attachment 1, however, reported Class 9 General Unsecured Creditors would receive $164,386.05 in a Chapter 7. On its face, Debtor's plan would not meet the so-called best interest of creditors test as required in 11 U.S.C. § 1325(a)(4). That said, Debtor listed only $396 in known unsecured debt, but she did list 23 unsecured creditors, with 21 as disclosed with unknown debt amounts. To date, only one unsecured creditor has filed a claim – DTE Energy of $541.45, so this deficiency is not fatal. The potential under secured claim of Northstar, however, would need to be addressed.

After the imposition of the automatic stay, the primary activity in this case involved the proof of claim of Northstar and whether the stay should be continued as to Northstar. Debtor objected to Northstar's proof of claim and focus has been directed to the amount owed to Northstar,

5

as well as to Northstar's right to foreclose. After a series of disagreements between Debtor and Frego, Frego filed a Motion to Withdraw because of a breakdown of communications and Debtor's desire to represent herself. The Court granted Frego's Motion by way of an Order dated June 13, 2022. In the interim, Frego filed the instant Fee Application requesting fees of $10,440.50 and expenses of $283.88. Debtor filed a response:

> I thank you for your time; and I have received your schedule of fees and I object. You need to take a look at your contract. I object, and that is not how you do business. I expected a Chapter 13, and that's what I was filing bankruptcy for, not to be converted to a Chapter 7. If I owe you fees, I am ok but I don't owe you those kind of fees.

The Court heard oral argument on June 16, 2022 and requested documents from Frego, which have been supplied. An additional hearing was held on July 19, 2022. Subsequently, the Court dismissed Debtor's case but allowed her until September 9, 2022 to convert to Chapter 7 or retain an attorney who could file a motion for reconsideration.

<u>Applicable Law</u>

11 U.S.C. § 330(a)(3) provides, in relevant part:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field;

6

and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(4) prohibits the Court from allowing compensation for:

(i) unnecessary duplication of services; or

(ii) services that were not–

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

The lodestar method is to be utilized in awarding fees under Section 330. *Boddy v. United States Bankruptcy Court, Western District of Kentucky (In re Boddy)*, 950 F.2d 334 (6th Cir. 1991). The lodestar method of fee calculation multiplies the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id*. at 337. The *Boddy* Court further held:

> The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. In many cases, these factors will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked.

*Boddy*, 950 F.2d at 338 (citations omitted).

Per *Boddy*, a "court can legitimately take into account the typical compensation that is adequate for attorney fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate." *Id.*

The professional requesting compensation has the burden of proof regarding the application for compensation. *In re Sharp*, 367 B.R. 582, 585 (Bankr. E.D. Mich. 2007); *In re New Boston Coke Corp.*, 299 B.R. 432 (Bankr. E.D. Mich. 2003).

When determining whether fees are reasonable, a court may also consider the "results obtained," as that phrase is used in *Boddy* as a lodestar factor. *In re Village Apothecary, Inc.*, No. 21-1555, 2022 WL 3365131, at *4-7 (6th Cir. Aug. 16, 2022). The *Village Apothecary* Court emphasized the "broad discretion" of bankruptcy courts in awarding fees, which allows for consideration of all factors. *Id*. at *5. For example, a bankruptcy court could consider whether services were reasonably beneficial at the time they were performed and benefitted the estate, even if the results obtained were unsuccessful. *Id*. The *Village Apothecary* decision affirmed a bankruptcy court's discretion to consider the "results obtained" under Section 330(a)(3), as part of its analysis of all factors when awarding fees. *Id*. at *8.

Analysis

The hourly rate stated in the Fee Application which ranges from $230 to $350 is not contested by Ms. Wilson-Oliver and for the most part is within the range of rates charged in this district. Mr. Frego's hourly rate of $350, which at 13.3 hours constitutes $4,655 of the fees requested, is at the highest end of this range, but he has decades of experience in bankruptcies, which, in this case his experience may be needed and the hourly rate warranted. If his rate is dropped by $25 per hour, the result would be $332.50 less. Assuming that reduction, the hourly rate is in line with attorneys in this division of the Eastern District.

Ms. Wilson-Oliver's response states she may owe Frego fees, but not the kind of fees requested. She also states she expected a Chapter 13, not a Chapter 7, proceeding. The Court agrees with Ms. Wilson-Oliver's observations up to a certain point, but observes that her Chapter 13 expectation may not be viable. The Court suspects that the chasm between these two concepts led to the communication breach that prompted Frego's withdrawal. The Court now turns to an unraveling of this case to determine the proper fee award to Frego.

From afar, Ms. Wilson-Oliver has a viable Chapter 13 – little unsecured debt, significant real estate holdings and a modest, but sustainable source of income to pay a Chapter 13 Trustee. The question that is still unanswered is how much she must pay to the Chapter 13 Trustee and how much property can she keep. In conjunction with this, it must be determined how much legal work is needed to have a Chapter 13 Plan confirmed.

A close examination of the docket, the pleadings, oral argument, and proofs of claim results in a conclusion that Ms. Wilson-Oliver wants to keep her property and contest how much she must pay, primarily to Northstar. This costs money, in the form of attorney fees. Frego originally estimated $4,000 to get a Chapter 13 Plan confirmed and another $3,500 through the completion. After some review, the $4,000 estimate is unfounded – the current application is for $10,440.50 AND Debtor is nowhere close to confirmation of a plan. In fact, her case is on the verge of dismissal or conversion to Chapter 7 as stated in the August 16, 2022 Order of this Court.

Turning to the fees requested by Frego, the hourly rates for all attorneys is accepted for this case which has unique real property, consumer finance, and real property tax issues. The difficulty starts when the Court must consider the factors of services not reasonably likely to benefit Debtor's estate or services that were not necessary to the administration of the case, with the follow up of reviewing the factors of results obtained. *In re Village Apothecary, Inc.*, 2022 WL 3365131, No. 21-1555, at *4-7 (6th Cir. Aug. 16, 2022).

Initially, the service entries appear connected to the benefit to Debtor's estate, but upon closer examination many services are not. For example, services beginning December 30, 2021 through January 20, 2022 regarding the imposition or extension of the automatic stay were untimely and higher than should be expected because Frego's internal calendaring system missed important deadlines and caused an unnecessary frantic rush to protect Debtor. The fees attributed

to stay litigation is $4,337.50. This Court has allowed $500 to $1,800 for services to extend the stay and in this case finds that no more than $2,000 would be appropriate if Frego had acted timely. Accordingly, the Court allows $2,000 for relief from stay/stay litigation and disallows $2,337.50. To summarize this portion, the $2,337.50 was neither likely to benefit Debtor's estate or necessary to the administration of the estate.

Likewise, some services in the case administration and Chapter 13 Plan categories neither benefitted Debtor's estate or were necessary to the administration of the estate. As previously stated, Debtor has some, but limited options to fund and complete a successful Chapter 13 Plan. Frego undoubtedly counseled Debtor about all her options, but she apparently rejected that advice, as evidenced by Frego's Motion to Withdraw as counsel, which cited an irreconcilable breakdown of communications. Coupled with the claim of Northstar, which was reduced to judgment, confirmation of a Chapter 13 Plan on terms acceptable to Debtor was difficult, if not unlikely.

With this backdrop, the Court does not find significant services beneficial to Debtor's estate because a Chapter 13 Plan could not be confirmed under terms acceptable to Ms. Wilson-Oliver, so many of the services were not necessary to the administration of the estate. Moreover, Frego estimated $4,000 of attorney fees and costs through confirmation, which the Court finds is the proper award of attorney fees in this case. First, it is the amount Frego estimated to complete the Chapter 13 Plan confirmation. As Debtor's counsel, he is in the best position to know the complexities of Debtor's case and obstacles to confirmation. Second, it is an amount Ms. Wilson-Oliver could see as the potential cost to get her Plan confirmed. Third, a reduction to $4,000 best fits the standards of Section 330 and *Boddy*. The reduction of $2,337.50 for unnecessary stay litigation services and a further reduction of slightly over half for the remaining services connected to attempts to confirm a Chapter 13 plan and objecting to the Northstar claim is appropriate to

avoid compensation of unnecessary services. Moreover, Frego has not meet its burden of proof to convince the Court that an award in excess of $4,000 is appropriate. Fourth, per *Village Apothecary*, an award of $4,000 recognizes the results obtained in this case, which is a stay of proceedings for approximately nine months and the potential, but unrealized confirmation of a Chapter 13 Plan. As to this point, a less than charitable view would be that a non-bankruptcy professional, such as a plaintiff personal injury attorney would receive zero dollars in a contingency case, but here Frego would receive $4,000 plus $283.88 in costs. This amount follows the Section 330 requirements and recognizes the adjustments allowed by *Boddy* and *Village Apothecary* to award for services reasonably likely to benefit Debtor's estate and necessary to the administration of the case, but also takes into account the results obtained. In doing so, Frego is compensated for his services.

For these reasons, the Court awards $4,000 for attorney fees and $283.88 in costs. The Court will enter an Order consistent with this Opinion.

**Not for Publication**

**Signed on September 2, 2022**

/s/ Daniel S. Opperman
_____
**Daniel S. Opperman**
**United States Bankruptcy Judge**